# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>RONNY GERALD MCDANIEL<br><br>              Petitioner. | No. 51296-3-II<br><br><br>UNPUBLISHED OPINION |

VELJACIC, J. — When he was 17, Ronny McDaniel shot and killed someone during an armed robbery. He pleaded guilty to amended charges and agreed with the State to a joint recommendation of 204 months, an exceptional upward sentence. The trial court accepted the joint recommendation. McDaniel petitions us to reverse his sentence because the trial court failed to meaningfully examine the mitigating circumstances of his youth as required by the Eighth Amendment to the United States Constitution. We deny McDaniel's personal restraint petition (PRP).

## FACTS

At the age of 17, McDaniel planned to rob a marijuana dealer at gun point. During the robbery, the marijuana dealer attempted to drive off and McDaniel shot and killed him. The State charged McDaniel with one count of murder in the first degree while armed with a deadly weapon and one count of attempted robbery in the first degree while armed with a deadly weapon. Under those charges, McDaniel faced a total standard range of 327-410 months. RCW 9.94A.510, .515, .533(3)(a).

The State and McDaniel negotiated a plea agreement that would reduce his murder in the first degree charge to manslaughter in the first degree. The State agreed to the reduced charges due to McDaniel's age. The maximum standard sentence for those charges is 179 months, but McDaniel agreed to an exceptional sentence of 204 months.

Prior to sentencing, the State conducted a psychiatric evaluation of McDaniel. The results showed McDaniel experienced a troubled childhood. His father was absent, child protective services investigated his household due to neglect and abusive parenting practices. His mother abused drugs and suffered from mental illness and had attempted suicide. She had a brain aneurysm requiring multiple hospitalizations. The family had few financial resources, moved often, and occasionally lived in motels. McDaniel had significant trouble in school.

McDaniel attended 8 or 9 elementary schools. He stated he had trouble focusing and had significant behavioral issues resulting in multiple suspensions and detentions. He qualified for special education services due to a learning disability. He was teased due to his academic and behavioral challenges. At the age of 15, he began using marijuana and used it daily when he was 16 or 17, and he also drank heavily on weekends.

During sentencing in superior court, the State presented the plea agreement and explained it offered to reduce McDaniel's charges due to his age. McDaniel's counsel summarized the psychiatric evaluation to the court, and also spoke at length, about his discussions with the State that led to the "hard negotiated settlement" that McDaniel agreed to:

> And Your Honor, I did share with the prosecutor some of the information regarding [McDaniel] as well as the psychiatric evaluation regarding teenaged brain development and how that's being looked at now in cases.
>     . . . .
> And I shared with [the prosecutor], Your Honor, the scientific literature regarding adolescents and how that dovetails in with the law. You know, the scientific studies have shown that the quality and levels of cognitive, emotional, psychosocial, neurobiological development in adolescents makes them fundamentally different

than adults. Compared to adults, adolescents are less able to control their impulses. They weigh the risks and rewards of possible actions differently. And they are less able to accurately envision the future of possible actions. . . They are more likely to engage in risky behavior.

. . . .

[The prosecutor] and I talked about all of these issues a lot. We talked about the case law, the [*State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015),] case in Washington state, the Supreme Court case which tells the courts that they have to take into account the brain development of the people that come before them and sentence them accordingly.

. . . .

And so the part of the brain that's not developed for certain people is the back part of the brain which tells people to stop, reflect upon what they're about to do. It controls for impulsive behavior. That was not developed in Mr. McDaniel's mind at—in his brain. That's one of the things that we talked about.

PRP Attachment C (Report of Proceedings (RP) at 27-32).

Counsel said that these were all of the things he discussed with the State "in order to come to this conclusion which we felt was reflective of what Mr. McDaniel did and did not do. And I think the court should be aware of all of these things. Because this was a hard negotiated settlement." PRP Attachment C (RP at 33). Counsel concluded by saying, "I think this is a fair resolution to this case. I think that it holds Mr. McDaniel accountable for what he did, and it also puts in front of the court all of the things that [the prosecutor] and I were talking about." PRP Attachment C (RP at 34).

Prior to imposing sentence, the trial court stated:

The court is also familiar with the science regarding brain development. Nothing related to that science takes away the fact that Mr. McDaniel is responsible for these crimes. And although the court agrees that the attorneys know much more about this case than the court does, and I appreciate all that's gone into that discussion and coming up with an agreed sentencing recommendation, the court specifically is not agreeing that all of the factors that have been mentioned today, specifically by [defense counsel], are relevant or necessarily would be admitted at a trial in this case. But I appreciate that many things that are said today and others have gone into those discussions and to the joint recommendation.

PRP Attachment C (RP at 36).

3

The trial court then imposed the jointly recommended sentence of 204 months. McDaniel filed a PRP within a year of his conviction pursuant to RCW 10.73.090.

ANALYSIS

McDaniel argues that the trial court's failure to examine the mitigating factors of his youth actually and substantially prejudiced him thereby necessitating a remand for resentencing. However, McDaniel does not argue that he would have received a lesser sentence but for the trial court's error, a requirement to establish actual and substantial prejudice. Accordingly, we deny his PRP.

"To prevail in a PRP, a petitioner must establish (1) a constitutional error that resulted in actual and substantial prejudice or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice." *State v. K.A.B.*, 14 Wn. App. 2d 677, 704, 475 P.3d 216 (2020). A petitioner must establish error by a preponderance of the evidence. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004).

When a criminal defendant demonstrates that his sentencing did not comply with *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), and that more likely than not, he would have received a lesser sentence if it had, he establishes actual and substantial prejudice. *In re the Pers. Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 269, 474 P.3d 524 (2020), *cert. denied*, *Washington v. Domingo-Cornelio*, ___ U.S. ___, 141 S. Ct. 1753, 209 L. Ed. 2d 515 (2021). Specifically, the petitioner must show that but for the alleged errors, the outcome of the proceedings would have been different on a more likely than not basis. *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315-16, 440 P.3d 978 (2019).

Here, McDaniel does not show actual and substantial prejudice because he does not show, let alone argue, that his sentence would have been different but for the alleged error. Instead, McDaniel entered into a carefully negotiated plea agreement with the State. McDaniel's attorney spoke at length at sentencing urging the court to adopt the joint sentencing recommendation, assuring the court that he and the State had extensively discussed the cases which address the diminished culpability of juveniles, including *O'Dell*, 183 Wn.2d 680, and *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). Not only does McDaniel fail to argue he would have received a lesser sentence, but the trial court imposed the exact sentence McDaniel requested. McDaniel fails to satisfy his burden of showing actual and substantial prejudice.

Even if McDaniel did show prejudice, his requested avenue of relief is improper. In a recent case, we examined the issue of whether a defendant may challenge a sentence imposed under a plea agreement where the trial court failed to consider the defendant's youth. *State v. Holt*, No. 53122-4-II, slip op. at 7-10 (Wash Ct. App. July 20, 2021) (unpublished), https://www.courts.wa.gov/opinions/. In *Holt*, the defendant entered into a negotiated plea agreement with the State in which he received a substantial reduction in charges in exchange for a joint sentencing recommendation. *Id*. slip op. at 2-3. The trial court imposed the recommended sentence. *Id*. slip op. at 3. We concluded that due to Holt receiving his requested sentence, his only avenue to challenge his sentence was to withdraw his plea. *Id.* slip op. at 13-14. Here, as in *Holt*, McDaniel received the exact sentence he asked the trial court to impose. McDaniel may seek a lesser sentence, but must withdraw his plea to do so.

McDaniel cites to an unpublished opinion, where a panel of this court concluded that the trial court erred by failing to analyze a juvenile defendant's individual circumstances, even though the trial court mentioned that youth was a mitigating factor during sentencing. *See State v. Morales*, No. 51279-3-II, slip op. at 3, (Wash Ct. App. Dec. 1, 2020) (unpublished), https://www.courts.wa.gov/opinions/. The defendant in *Morales* pleaded guilty to a lesser charge, and both the defendant and the State agreed that the court should impose the low end of the standard sentence. *Id*. slip op. at 2. On direct appeal, this court initially affirmed the trial court's sentence. *Id.* slip op. at 1. Morales then petitioned the Supreme Court for review, which remanded the case for reconsideration in light of *State v. Delbosque*, 195 Wn.2d 106, 456 P.3d 806 (2020). *Morales*, No. 51279-3-II, slip op. at 1. During sentencing, the trial court "acknowledged the application of *Houston-Sconiers* . . . but did not expressly discuss any of the features of youth on the record." *Id*. slip op. at 5. This court concluded that the trial court failed to adequately consider Morales's youth during sentencing. *Id*.

McDaniel also argues that under *Houston-Sconiers*, 188 Wn.2d 1, trial courts must meaningfully consider mitigating factors of youth. He also cites to *In re Pers. Restraint of Smith*, No. 49127-3-II, (Wash. Ct. App. Aug. 29, 2017) (unpublished), https://www.courts.wa.gov/opinions/, which applied *Houston-Sconiers* to factual circumstances similar to McDaniel's. However, McDaniel's reliance on *Morales*, *Houston-Sconiers*, and *Smith* is misplaced. Those cases are inapposite because one was a direct appeal, while the other did not involve a plea agreements.

CONCLUSION

Because McDaniel received the exact sentence he requested from the trial court, and because he has not indicated that he would seek a different sentence at a resentencing hearing, he cannot demonstrate actual and substantial prejudice. Accordingly we deny his PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Cruser, P.J.

Price, J.

7